City of Hutchinson v. Stewart.

---

No. 22,608.

THE CITY OF HUTCHINSON, *Appellant*, v. CHARLES H. STEWART, as County Clerk, etc., *Appellee*.

SYLLABUS BY THE COURT.

TAXATION—*City of First Class—Unplatted Lands Annexed to City After July 5—Not Taxable by City for Current Year*. The tax law does not authorize a city of the first class to levy taxes for the year 1919 on tracts of unplatted land, described by metes and bounds, and containing approximately 20 acres and 160 acres, annexed to the city by ordinances passed on July 5 and July 11, 1919.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed December 6, 1919. Affirmed.

*W. A. Huxman*, city attorney, for the appellant; *F. Dumont Smith*, of Hutchinson, of counsel.

*W. H. Burnett*, county attorney, for the appellee; *W. F. Jones, A. C. Malloy, C. M. Williams*, and *D. C. Martindell*, all of Hutchinson, of counsel.

The opinion of the court was delivered by

BURCH, J.: The appeal is taken from a judgment of the district court denying a writ of mandamus to compel the county clerk to extend city tax levies against certain real estate.

The real estate consists of two tracts of unplatted land, described by metes and bounds, which were taken into the city by ordinances passed on July 5 and July 11, 1919. One tract contains a little less than twenty acres, and the other contains a little more than a quarter section. The city is a city of the first class, and presumably acted under the authority conferred by section 1041 of the General Statutes of 1915. The contention of the city is that immediately on passage of the ordinances the land became taxable property in the city of Hutchinson, and subject to city taxes levied in August of the current year.

There is no statute which definitely upholds the city's contention, and the general scheme of taxation established by the tax law is opposed to it. No valid tax may be levied unless authorized by law. Property taxation is by districts. Listing and valuation in the proper district are essential. The rate of taxation in a district is computed on the value of the property in that district, and taxes for one district may not be levied on the property of another. It is essential to administration of the tax law that stages of the tax proceeding be closed at definite times, except for redress of grievances and correction of inequalities and errors. The assessment roll must be complete and in the hands of the county clerk by May 31. The county board of equalization must complete its work and adjourn *sine die* not later than June 20. The tax commission has further authority over the subject, but unless it interfere, a landowner may rely on the fact that his land has been listed and valued as shown by the returned assessment roll, that its valuation has been equalized with regard to the valuation of other property in the same district, and that it is subject to taxes levied in that district. The county clerk may rely on the fact that the returned rolls of the various districts, taken together, constitute the assessment roll of the county, on which he must extend tax levies when they are certified to him. The authority of a city to certify its levies, and the authority of the county clerk to extend such levies, are limited to property "in such corporation, as returned on the assessment roll of the county." (Gen. Stat. 1915, § 11345.) In the present instance the property was not in the city when the assessment roll was returned, and was not returned on the assessment roll as in the city. It formed

part of a rural township, and without further statutory authority neither the city nor the county clerk may shift the property from the township roll to the city roll, with respect to which it has not been listed or valued or its valuation equalized.

The legislature has considered the specific subject of taxation by a city of rural property brought within the city limits. When a city is organized within the biennial period following regular assessment, there may be a reassessment. In that event the assessment is of lots, blocks, and undivided tracts, and constitutes the basis of city tax levies for the current year; but no such assessment may be ordered after August first of the current tax year. (Gen. Stat. 1915, § 11284.) When a tract of land outside a city has been taken into the city by extension of boundary after the regular biennial assessment, and the tract has been platted into lots and blocks, a reassessment may be ordered, under the limitations imposed in the case of original city organization. (Gen. Stat. 1915, § 11285.) Section 11264 of the General Statutes of 1915 reads as follows:

"If, between the first days of March and May, the corporate boundaries of any city shall be extended so as to take into the city tracts described by metes and bounds of the size of lots usually platted in such city, or old or new platted lands adjoining the city, such real estate shall be assessed by the proper officer as town lots within such city for the current year; but if such extension of the boundaries of the city shall occur after May 1, then the real estate so taken into the city shall not be assessed as town lots until the first day of March following, and the value which has been placed upon the real estate in the assessment of March 1 of the current year shall be, by the county clerk, divided *pro rata* according to surface measurement among the tracts or lots so taken into the city; but the said lots shall not be charged with the city tax levies for the current year."

None of the sections just referred to applies to inclusion of territory under the particular circumstances of the present case. The implication is, the legislature has extended liability of incorporated rural property to city taxation as far as it desired.

The argument of the city consists chiefly in deductions from the principle of reciprocity between the obligation of a taxpayer and governmental protection. Property enjoys police protection, fire protection, sanitary protection, and other advantages of municipal government, and consequently should

bear its share of municipal taxes, as just consideration for benefits received. This theory of taxation. is now generally repudiated, and what is known as the "faculty theory," involving the idea of equal sacrifice, is accepted by modern economic thought. (Gray on Limitations of Taxing Power, § 20a, and following sections.) Whatever the true standard may be, considerations of theoretical equality may be subordinated to the necessities of practical administration, and authority to tax may be postponed, although jurisdiction for other purposes may attach. Section 11264 of the General Statutes of 1915, quoted above, is illustrative. City taxes may not be levied on property of the class there described, annexed after May 1. It is said that this is the exception which proves the general rule. On the contrary, when the legislature has intended that immediate authority to tax should accompany enlargement of corporate boundary, it has so stated, as in the case of annexation of adjacent territory by boards of education of cities of the first class. (Gen. Stat. 1915, § 9114.) If property platted for actual dedication to town-site purposes may not be subjected to city taxes for the current year, as consideration for city benefits, if annexed after May 1, very clear legislative authority should appear to render a quarter section of farm land, annexed after July 1, subject to city taxes for the current year, as consideration for benefits, real or fancied, to be derived from city government.

Some school-district cases are cited in support of the city's contention. They do not apply, for two reasons: first, a school district is not a primary taxing district, such as a township or a city; second, the question under consideration was not involved, and was neither directly nor indirectly determined in any of the cases. In each instance, the tax was challenged by attacking the organization levying the tax, and it was held the ground of attack was not well chosen. The decisions cited might be of some authority if, in this instance, the county clerk had resisted on the ground the annexation proceedings were invalid. In its brief the city prints a quotation from one of the cases, in this form:

"There was sufficient evidence to clearly indicate a de facto existence of this school district WHEN THIS LEVY WAS MADE."

Pertinency of the quotation would be better indicated by printing it in this form:

"There was sufficient evidence to clearly indicate A DE FACTO EXISTENCE OF THIS SCHOOL DISTRICT when this levy was made."

Other authorities referred to in the city's brief are not interpretative of the tax laws of this state, and need not be discussed.

The judgment of the district court is affirmed.